<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| CARLOS BERNAL, | |
| Plaintiff, | |
| v. | Case No. 2:22-cv-05044 (BRM) (JBC) |
| BOROUGH OF BOGOTA, *et al.*, | **OPINION** |
| Defendants. | |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) filed by Defendants Police Officer Lewis Duenas ("Officer Duenas"), Sergeant Geoffrey Cole ("Sgt. Cole") (collectively "Individual Defendants"), Borough of Bogota, and Bogota Police Department (together with the Individual Defendants, "Defendants"). (ECF No. 5.) Plaintiff Carlos Bernal ("Bernal") filed an opposition to the motion and requested leave to file an amended complaint to cure any deficiencies. (ECF No. 10.) Defendants filed a reply. (ECF No. 11.) Having reviewed the parties' submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**, and Bernal's request for leave to cure any deficiencies and file an amended complaint is **GRANTED**.

## I.   BACKGROUND

For the purpose of this motion to dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Bernal. *See Phillips v.*

*Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court applies this same standard on a motion to dismiss for lack of subject matter jurisdiction.[1] *See Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007) ("Pursuant to Rule 12(b)(1), the Court must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party." (citing *Warth v. Seldin*, 422 U.S. 490 (1975); *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir. 2003))). The Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)) (emphasis added).

This action arises out of an interaction between Bernal and officers of the Bogota Police Department. (Compl. (ECF No. 1) ¶ 12.) Bernal owns a store front fitness facility. (*Id.* ¶ 13.) On September 11, 2020, Bernal and his neighbor engaged in a "brief verbal dispute" outside the facility after the neighbor confronted Bernal about carrying on activities in front of Bernal's store. (*Id.* ¶ 12, 14.) Ultimately, 9-1-1 was called. (*Id.* ¶ 14.)

Officer Duenas and Sgt. Cole arrived on the scene shortly thereafter and spoke to both the neighbor and Bernal. (*Id.* ¶¶ 15, 16, 18.) Bernal alleges that Officer Duenas requested to see his identification, and Bernal informed him he did not have his identification on him. (*Id.* ¶ 22.) Officer Duenas requested Bernal provide his home address. (*Id.* ¶ 23.) Bernal provided his name to Officer

---

[1] The Court applies this same standard on a motion to dismiss for lack of subject matter jurisdiction for facial attacks to subject matter jurisdiction only. *Compare In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625 (3d Cir. 2017) (applying the same standard used for a motion to dismiss under Rule 12(b)(6) when reviewing a facial attack made under Rule 12(b)(1)), *with Gould Elecs. Inc. v. United States*, 220 F.3d 169 (3d Cir. 2002) (explaining that "in a factual attack under Rule 12(b)(1), the court may consider and weigh evidence outside the pleadings to determine if it has jurisdiction").

2

Duenas but refused to disclose his address. (*Id.*) Bernal alleges Officer Duenas became upset with Bernal after this refusal and placed him under arrest. (*Id.* at ¶ 24.)

On September 15, 2020, Bernal was charged with Disorderly Conduct under N.J. Stat. Ann. 2C: 33-2. (*Id.*) Bernal's charges resulted in a criminal trial that began on April 22, 2022. (*Id.* ¶ 71.) On May 13, 2022, Bernal was found not guilty of Disorderly Conduct. (*Id.* ¶ 73.) On August 13, 2022, Bernal filed this action alleging claims under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA") at N.J. Stat. Ann. 10:6-2 *et seq.*, and New Jersey common law for False Arrest (Counts 1 and 2), Unlawful Search and Seizure (Counts 3 and 4), False Imprisonment (Counts 5 and 6), Failure to Supervise (Count 7), Failure to Intervene (Count 8), Substantive Due Process (Count 9), Procedural Due Process (Count 10), Abuse of Process (Count 11), Malicious Abuse of Process (Count 12), Malicious Prosecution (Counts 13 and 14), Denial of Fair Trial (Count 15), and a *Monell* claim (Count 16). (*Id.* ¶¶ 94-213.)

## II.   LEGAL STANDARD

### A.     Rule 12(b)(1)

"When a motion under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot." *Dickerson v. Bank of Am., N.A.*, Civ. A. No. 12-03922, 2013 U.S. Dist. LEXIS 37639, at *2 (D.N.J. Mar. 19, 2013) (quoting *In re Corestates Trust Fee Litig.*, 837 F. Supp. 104, 105 (E.D. Pa. 1993), *aff'd* 39 F.3d 61 (3d Cir. 1994)). In considering dismissal for lack of subject matter jurisdiction, a district court's focus is not on whether the factual allegations entitle a plaintiff to relief but rather on whether the court has jurisdiction to hear the claim and grant relief. *Maertin v. Armstrong World Indus., Inc.*, 241 F.

Supp. 2d 434, 445 (D.N.J. 2002) (citing *New Hope Books, Inc. v. Farmer*, 82 F. Supp. 2d 321, 324 (D.N.J. 2000)).

"A challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or a factual attack." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). A facial attack "challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'" *Id*. (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006)). A factual attack, on the other hand, "attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise present[ing] competing facts.'" *Id*. (alteration in original) (quoting *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)). A "factual challenge allows 'a court [to] weigh and consider evidence outside the pleadings'" and "no presumptive truthfulness attaches to [the] plaintiff's allegations." *Id*. (alterations in original) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). Rather, "'the plaintiff will have the burden of proof that jurisdiction does in fact exist,' and the court 'is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Id*. (quoting *Mortensen*, 549 F.2d at 891).

The Third Circuit has "repeatedly cautioned against allowing a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction to be turned into an attack on the merits." *Id*. at 348–49 (collecting cases). "[D]ismissal for lack of jurisdiction is not appropriate merely because the legal theory alleged is probably false, but only because the right claimed is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" *Id*. at 350 (quoting *Kulick v. Pocono Downs Racing Ass'n*, 816 F.2d 895, 899 (3d Cir. 1987)). "In this vein, when a case raises a disputed factual issue

that goes both to the merits and jurisdiction, district courts must 'demand less in the way of jurisdictional proof than would be appropriate at a trial stage.'" *Id*. (quoting *Mortensen*, 549 F.2d at 892 (holding dismissal under Rule 12(b)(1) would be "unusual" when the facts necessary to succeed on the merits are at least in part the same as must be alleged or proven to withstand jurisdictional attacks)). These cases make clear "dismissal via a Rule 12(b)(1) factual challenge to standing should be granted sparingly." *Id*.

Here, Defendants, by asserting that Bernal's claims do not meet the $75,000 in controversy requirement, raise a facial 12(b)(1) challenge. Therefore, the Court considers the allegations in the light most favorable to Bernal. *In re Horizon Healthcare Servs. Data Breach Litig.*, 846 F.3d at 633.

### B.      Rule 12(b)(6)

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

5

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint to allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pleaded; it must include "factual enhancement" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citations omitted). In assessing plausibility, the court may not consider any "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after *Iqbal*, conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible, allowing "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Supreme

6

Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See id.* at 670.

While, generally, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied* upon in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (emphasis added) (quoting *Shaw*, 82 F.3d at 1220). However, "[w]hen the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Princeton Univ.*, 30 F.4th at 342.

## III.   DECISION

### A.      Motion to Dismiss Pursuant to Rule 12(b)(1)

Defendants argue Bernal's claims should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). Defendants' challenge to subject matter jurisdiction is limited to just one allegation in their motion, stating: "the District Court should decline jurisdiction since the claim in question . . . simply does not result in a claim exceeding the $75,000 jurisdictional limit, even including attorneys fees." (ECF No. 5 at 37.) However, Defendants concede that the Court has subject matter jurisdiction over "claims involving a federal statute such as Section 1983 or the United States Constitution . . . pursuant to 28 U.S.C. §1331." (ECF No. 11 at 13.) Here, Bernal brings claims alleging violations of his constitutional rights and § 1983, falling squarely within Defendants' accurate articulation of the standard for subject matter jurisdiction

with the Court. Accordingly, Defendant's Motion to Dismiss pursuant to Rule 12(b)(1) is **DENIED**.

### B.    Motion to Dismiss Claims Against Bogota Police Department

All of Bernal's claims against the Bogota Police Department fail and must be dismissed. "[P]olice departments and municipalities are treated as a single entity for purposes of [Section] 1983, and courts in the Third Circuit frequently dismiss claims against police departments . . . when those departments are sued in conjunction with the municipalities." *Catlett v. N.J. State Police*, No. 12-153, 2013 WL 2181273, at *4 (D.N.J. May 20, 2013). "In Section 1983 actions, police departments cannot be sued in conjunction with municipalities, because the police department is merely an administrative arm of the local municipality, and is not a separate judicial entity." *Padilla v. Twp. of Cherry Hill*, 110 F. App'x 272, 278 (3d Cir. 2004) (citation omitted); *see also Trafton v. City of Woodbury,* 799 F. Supp. 2d. 417, 429 (D.N.J. 2011) (finding the defendant police department cannot be sued under Section 1983 and dismissing all claims against the department); *Trapp v. New Jersey*, No. 17-10709, 2018 WL 4489680, at *6 (D.N.J. Sept. 19, 2018) (same); *Catlett*, 2013 WL 2181273 at *4  (same).

Here, Bernal sued the police department and the municipality. Because the Bogota Police Department is not a separate entity from the Borough of Bogota, Defendants' Motion to Dismiss, to the extent it seeks dismissal of all claims against Bogota Police Department, is **GRANTED**. All claims against the Bogota Police Department are **DISMISSED WITH PREJUDICE**.

### C.    Motion to Dismiss Claims Against the Individual Defendants Based on Qualified Immunity

The Individual Defendants argue that they are entitled to qualified immunity from Bernal's Section 1983 claims. (ECF No. 5 at 32.) Bernal contends Defendants' motion should be "denied at this stage of the pleading whereby the courts [sic] analysis will turn on a more factual

8

determination, and a Rule 12(b)(6) motion dismiss [sic] is not the appropriate stage to consider this argument." (ECF No. 10 at 16.)

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Montanez v. Thompson*, 603 F.3d 243, 249-50 (3d Cir. 2010) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. This doctrine provides a government official immunity from suit rather than a mere defense from liability. *Id.* Qualified immunity will not, however, act as a shield for "the official who knows or should know he is acting outside the law." *Butz v. Economou*, 438 U.S. 478, 506–07 (1978).

To determine whether the Individual Defendants are entitled to qualified immunity, the Court must undertake a two-step inquiry:

> First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was clearly established at the time of a defendant's alleged misconduct. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right.

*Pearson*, 555 U.S. at 232 (citations omitted).

In other words, if the official's conduct violated a clearly established right, qualified immunity does not apply. "[C]ourts are free to address the two elements in whichever order they deem appropriate." *Halsey v. Pfeiffer*, 750 F.3d 273, 287 (3d Cir. 2014) (citing *Pearson*, 555 U.S. at 235).

9

"The dispositive point in determining whether a right is clearly established is whether a reasonable officer in the same situation clearly would understand that his actions were unlawful." *Morillo v. Torres*, 117 A.3d 1206, 1214 (N.J. 2015) (citation omitted). "In other words, 'existing precedent must have placed the statutory or constitutional question' confronted by the official 'beyond debate.'" *Id.* at 1215 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)); *see also White v. Pauly*, 580 U.S. 73, 77 (2017) ("While this Court's case law do[es] not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." (internal quotations and citation omitted)). Indeed, qualified immunity "shields an officer from suit when [he or she] makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [he or she] confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (citing *Saucier v. Katz*, 533 U.S. 194, 206 (2001) (stating that qualified immunity operates "to protect officers from the sometimes 'hazy border between excessive and acceptable force'")). There is a "longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" *White*, 137 S. Ct. at 552 (quoting *al–Kidd*, 563 U.S. at 742). Rather, "the clearly established law must be 'particularized' to the facts of the case." *Id.* (citing *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)). "Otherwise, [p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id.* (alterations in original) (citation omitted).

"[W]hen a plaintiff asserts that he or she was unlawfully arrested, a law enforcement officer can defend such a claim 'by establishing either that he or she acted with probable cause, or, even if probable cause did not exist, that a reasonable police officer could have believed in its existence.'" *Morillo*, 117 A.3d at 1215 (quoting *Kirk v. City of Newark*, 536 A.2d 229, 234

(N.J. 1988)). "If officers of reasonable competence could disagree on the issue of probable cause, the doctrine of qualified immunity should be applied." *Connor v. Powell*, 744 A.2d 1158, 1164 (N.J. 2000) (citing *Malley v. Briggs,* 475 U.S. 335, 341 (1986)). However, "a decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis." *Curley v. Klem*, 298 F.3d 271, 278 (3d Cir. 2002).

Fourth Amendment reasonableness 'is predominantly an objective inquiry.'" *al-Kidd*, 563 U.S. at 736 (citing *City of Indianapolis v. Edmond*, 531 U.S. 32, 47 (2000)). Courts ask whether "the circumstances, viewed objectively, justify [the challenged] action." *Id.* (quoting *Scott v. United States,* 436 U.S. 128, 138 (1978)) (alteration in original) (internal quotation omitted). "If so, that action was reasonable 'whatever the subjective intent' motivating the relevant officials." *Id.* (quoting *Wren v. United States,* 517 U.S. 806, 814 (1996)). "This approach recognizes that the Fourth Amendment regulates conduct rather than thoughts." *Id.* (citing *Bond v. United States,* 529 U.S. 334, 338 n.2 (2000)). The "standard of objective reasonableness . . . is a lesser standard than required for probable cause." *Schneider v. Simonini*, 749 A.2d 336, 352 (N.J. 2000).

Here, the Complaint sets forth sufficient factual allegations to clear the significant hurdle necessary to defeat qualified immunity at this stage. It is premature to determine if probable cause existed in this case, or "[i]f officers of reasonable competence could disagree on the issue of probable cause[.]" *Curley*, 298 F.3d at 278; *Connor*, 744 A.2d at 1164. Bernal alleges he was arrested after Officer Duenas became upset at Bernal's refusal to provide his identification or home address. (ECF No. 1 ¶ 24.) Further, Bernal alleges Officer Duenas verbally confirmed during his arrest that Bernal was arrested for failing to provide his identification. (*Id.* at ¶ 25.) Individual Defendants contest the facts surrounding Bernal's arrest. (ECF No. 5 at 4.) Individual Defendants claim that "[Bernal] had refused to provide his residence address, and had begun yelling and

screaming at Duenas . . . Duenas had asked [Bernal] repeatedly to calm down, but [Bernal] had continued to make a scene, and [Bernal] was arrested . . . ." (*Id.*) At this stage, "a decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis." *Curley*, 298 F.3d at 278. Accordingly, Defendants' Motion to Dismiss, to the extent it seeks dismissal of all claims against Individual Defendants, is **DENIED**.

> **D.      Motion to Dismiss Claims Against Borough of Bogota**

Defendants argue the Complaint fails to identify any specific policy, practice, or custom of the Borough of Bogota that resulted in "Officer Duenas 'making the wrong decision[.]'" (ECF No. 5 at 20.) Further, Defendants contend Bernal failed to allege specific facts to sustain a failure to train claim. (*Id.*) Bernal claims he sufficiently pleaded that the Borough of Bogota is liable under Section 1983 for the alleged constitutional violations committed by its officers by instituting policies, practices, and customs that caused Bernal's alleged constitutional injuries and for failing to adequately train and supervise its officers. (ECF No. 1 ¶¶ 199-213.)

"The Supreme Court enunciated the rule for imposing liability against a municipality [or local government] under [S]ection 1983 in *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978)." *Kneipp v. Tedder*, 95 F.3d 1199, 1211 (3d Cir. 1996). Pursuant to 42 U.S.C. § 1983, governmental entities cannot be liable for the actions of its employees on a *respondeat superior* theory. *Iqbal*, 556 U.S. at 676. The Court in *Monell* held:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell*, 436 U.S. at 694. There must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation" to establish municipal liability. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

### 1.    Policy or Custom

There are three scenarios where the acts of a government employee may be characterized to be the result of a policy or custom of a government entity:

> The first is where the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy. The second occurs where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself. Finally, a policy or custom may also exist where the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.

*Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 250 (3d Cir. 2007) (citation omitted).

A policy or custom can be established in two ways. "Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Benjamin v. E. Orange Police Dep't*, 937 F. Supp. 2d 582, 595 (D.N.J. 2013) (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990) (citation omitted)). "A course of conduct is considered to be a custom when, though not authorized by law, such practices of state officials [are] so permanent and well settled as to virtually constitute law." *Id.* (quoting *Andrews*, 895 F.2d at 1480 (alteration in original) (internal quotations and citation omitted)). Custom can also be established through evidence of "knowledge and acquiescence." *Id.*

Here, Bernal fails to allege the existence of any preexisting policy, custom, or practice, that could form the basis of a municipal liability claim. The Complaint merely sets forth conclusory statements:

> It was the custom, policy and practice of Defendants to make and arrest despite no facts of criminality and without probable cause and/or other legal justification. It was the custom, policy and practice of Defendants to authorize and permit certain police officers and prosecutors, including the individual defendants, to cause unlawful detentions and continue to prosecute offenses after probable cause is vitiated, which was responsible for the violation of Plaintiff's civil rights.

(ECF No. 1 ¶¶ 203-04.) These allegations are completely conclusory and, at best, merely recite the elements necessary to establish a *Monell* claim. The Complaint is devoid of any facts demonstrating a policy or facts supporting that false arrests were so pervasive and well settled as to constitute a custom under *Monell* in the Borough of Bogota. *See Rollins v. City of Newark*, No. 18-14473, 2020 WL 1528035 (D.N.J. March 31, 2020) (holding that a successful *Monell* claim must contain specific factual allegations and mere "[c]onclusory recitations of the elements of a *Monell* claim are insufficient"). Accordingly, Bernal failed to establish liability of the Borough of Bogota via its policies or customs.

### 2. Failure to Train

"[I]n the absence of an unconstitutional policy, a municipality's failure to properly train its employees and officers can create an actionable violation of a party's constitutional rights under § 1983." *Reitz v. Cnty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997) (citation omitted). However, a failure to train claim can only serve as the basis for a Section 1983 liability when "the failure to train amounts to deliberate indifference to the rights of persons with whom the [municipal employees] come into contact." *Id.* (alteration in original) (citation omitted). "Only where a failure

to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983." *Id.* (citation omitted).

Establishing a failure to train claim under Section 1983 is difficult. *Id.*; *City of Canton*, 489 U.S. at 387 (explaining there are "limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under § 1983"). "A plaintiff pressing a § 1983 claim must identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred." *Reitz*, 125 F.3d at 145 (citing *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1030 (3d Cir. 1991)). A "plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997). Specifically, "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.*

As such, to establish whether a municipality's alleged failure to train amounted to a deliberate or conscious choice, a plaintiff must demonstrate that: "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Doe v. Luzerne Cnty.*, 660 F.3d 169, 180 (3d Cir. 2011) (quoting *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (citation omitted).

15

Here, Bernal fails to allege any facts to support a finding that the Borough of Bogota failed to train, supervise, penalize, or correct any officer's behavior. Again, the allegations in the Complaint reflect nothing more than a conclusory recitation of the elements of a failure to train or supervise claim. *See, e.g., Rollins*, 2020 WL 1528035; *Benjamin*, 937 F. Supp. 2d 582, 595. Specifically, Bernal fails to allege any facts supporting the Borough of Bogota failed to provide any specific training, or that the Borough was otherwise deliberately indifferent to Bernal's rights. Accordingly, Bernal has failed to state a claim under Section 1983, and Defendants' Motion to Dismiss, to the extent it seeks dismissal of all claims against Borough of Bogota, is **GRANTED**.

### E.    Bernal's Request for Leave to Amend

Bernal requests leave to amend the Complaint to the extent any of his claims are dismissed. (ECF No. 11 at 16.) "A general presumption exists in favor of allowing a party to amend its pleadings." *Hunter v. Dematic USA*, Civ. A. No. 16-00872, 2016 U.S. Dist. LEXIS 65167, at *12 (D.N.J. May 18, 2016) (citing *Boileau v. Bethlehem Steel Corp.*, 730 F.2d 929, 938 (3d Cir. 1984)). "Leave to amend a complaint should be granted freely in the absence of undue delay or bad faith on the part of the movant as long as the amendment would not be futile and the opposing party would not suffer undue prejudice." *Id*. (citations omitted); *see also Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002)) ("[E]ven when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile."). Accordingly, Bernal's request for leave to cure any deficiencies and file an amended complaint is **GRANTED.**

### IV.    CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss (ECF No. 5) is **GRANTED IN PART** and **DENIED IN PART**, and Bernal's request for leave to cure any deficiencies and file an amended complaint is **GRANTED**. An appropriate order follows.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Date: February 9, 2023