NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARLOS BERNAL, <br><br> Plaintiff, <br><br> v. <br><br> BOROUGH OF BOGOTA, *et al.*, <br><br> Defendants. | Case No. 2:22-cv-05044 (BRM) (JBC) <br><br> OPINION |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is a Motion to Dismiss filed pursuant to Federal Rules of Civil Procedure 12(b)(6) filed by Defendants Police Officer Lewis Duenas ("Officer Duenas"), Sergeant Geoffrey Cole ("Sgt. Cole") (collectively "Individual Defendants"), and Borough of Bogota (individually, "Bogota," together with the Individual Defendants, "Defendants"). (ECF No. 18.) Plaintiff Carlos Bernal ("Bernal") filed an opposition to the motion. (ECF No. 20.) Defendants filed a reply. (ECF No. 23.) Having reviewed the parties' submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, Defendants' Motion to Dismiss is **GRANTED**.

**I.   BACKGROUND**

For the purpose of this motion to dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Bernal. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*,

1

114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

This action arises out of an interaction between Bernal and officers of the Bogota Police Department. (Am. Compl. (ECF No. 17) ¶ 12.) Bernal owns a store front fitness facility. (*Id.* ¶ 13.) On September 11, 2020, Bernal and his neighbor engaged in a "brief verbal dispute" outside the facility after the neighbor confronted Bernal about "carrying on activities" in front of Bernal's store. (*Id.* ¶ 12, 14.) Ultimately, 9-1-1 was called. (*Id.* ¶ 14.)

Officer Duenas and Sgt. Cole arrived on the scene and spoke to both the neighbor and Bernal. (*Id.* ¶¶ 15, 16, 18.) Bernal alleges that Officer Duenas requested to see his identification, and Bernal informed him he did not have his identification on him. (*Id.* ¶ 22.) Officer Duenas requested Bernal provide his home address. (*Id.* ¶ 23.) Bernal provided his name to Officer Duenas but refused to disclose his address. (*Id.*) Bernal alleges Officer Duenas became upset with Bernal after this refusal and placed him under arrest. (*Id.* at ¶ 24.)

On September 15, 2020, Bernal was charged with Disorderly Conduct under N.J. Stat. Ann. 2C: 33-2. (*Id.*) Bernal's charges resulted in a criminal trial that began on April 22, 2022. (*Id.* ¶ 71.) On May 13, 2022, Bernal was found not guilty of Disorderly Conduct. (*Id.* ¶ 73.) On August 13, 2022, Bernal filed a Complaint bringing claims under 42 U.S.C. § 1983, the New Jersey Civil Rights Act ("NJCRA") N.J. Stat. Ann. 10:6-2 *et seq.*, and New Jersey common law for False Arrest (Counts 1 and 2); Unlawful Search and Seizure (Counts 3 and 4); False Imprisonment (Counts 5 and 6); Failure to Supervise (Count 7); Failure to Intervene (Count 8); Substantive Due Process (Count 9); Procedural Due Process (Count 10); Abuse of Process (Count 11); Malicious Abuse of Process (Count 12); Malicious Prosecution (Counts 13 and 14); Denial of Fair Trial (Count 15); and a *Monell* claim (Count 16). (ECF No. 1 ¶¶ 94–213.) On February 9, 2023, the Court dismissed

the Complaint in part, but permitted Bernal limited opportunity to amend. (ECF No. 13.) On March 9, 2023, Bernal filed an Amended Complaint ("FAC"). (ECF No. 17.) On March 27, 2023, Defendants filed a Motion to Dismiss the FAC (ECF No. 18), accompanied by a Brief in Support of the Motion (the "Brief") (ECF No. 18-5). On April 26, 2023, Bernal filed an opposition. (ECF No. 20.) On May 8, 2023, Defendants filed a reply. (ECF No. 23.)

On August 18, 2023, the Court filed a letter order (the "Order") denying, in part, Defendants' Motion as moot to the extent the Motion sought to dismiss Counts 7, 8, 9, 10, 11, 12, and 15 asserted against Bogota, and ordering Defendants to file a supplemental letter clarifying which defendants are moving to dismiss which claims. (ECF No. 31.) On August 18, 2023, Defendants filed the letter (the "Letter") (ECF No. 32), and on August 25, 2023, Bernal filed his own letter in reply (ECF No. 33).

## II.   LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual

3

allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint to allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pleaded; it must include "factual enhancement" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citations omitted). In assessing plausibility, the court may not consider any "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after *Iqbal*, conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. To prevent dismissal, all civil complaints must set out

"sufficient factual matter" to show that the claim is facially plausible, allowing "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See id.* at 670.

While, generally, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied* upon in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (emphasis added) (quoting *Shaw*, 82 F.3d at 1220). However, "[w]hen the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Princeton Univ.*, 30 F.4th at 342.

### III.  DECISION

The Court construes Defendants' Letter to limit the Motion to Bogota as moving to dismiss Count 16.[1] (ECF No. 32.)

---

[1] Despite Defendants' Letter, it is still unclear to the Court which defendants are moving to dismiss which claims. Defendants contend their Brief "ma[d]e it clear that . . . [Bogota] (not [Officer] Duenas or [Sgt.] Cole) seeks the dismissal of Plaintiff's newly-amended *Monell* municipal liability claims made only in Count 16 against [Bogota]." (ECF No. 31 at 2–3 (emphasis omitted).) Contradictorily, Defendants also insist that Count 16 contains claims against Individual Defendants and that these claims are improper. (*Id.* at 1–2.) Bernal has stated that the title of each count in the FAC makes clear which counts are brought against which defendants. (ECF No. 23 at 9.) Count 16's title clearly indicates that Count 16 is only brought against Bogota. (ECF No. 17 ¶ 201.) Therefore, the Court is unable to dismiss any claims asserted against Individual Defendants within Count 16 as Defendants request, because these claims do not exist. *See Fisher v. Schott*, Civ. A. No. 13-5549, 2014 WL 6474216, at *5 (D.N.J. Nov. 19, 2014). Additionally, Defendants acknowledge that "[Bogota] is not identified as a potential Defendant in the Count 7 Point Heading," but nevertheless they request dismissal of Count 7 to the extent it brings a claim against

Bogota argues that Bernal's *Monell* claim is "procedurally deficient" because it "consists of only 'labels and conclusions,'" and seeks to establish municipal liability via vicarious liability. (ECF No. 18-5 at 20.) Bogota contends the prior instances of misconduct that Bernal references are insufficient to establish a custom of permitting constitutional violations by Bogota officers because none of the prior instances of misconduct involve Individual Defendants specifically. (*Id.* at 22.) Bernal asserts that the prior instances of misconduct can properly serve as the basis to conclude that Bogota has a custom of permitting constitutional violations by its officers. (ECF No. 20 at 4–9.)

"The Supreme Court enunciated the rule for imposing liability against a municipality [or local government] under [S]ection 1983 in *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978)." *Kneipp v. Tedder*, 95 F.3d 1199, 1211 (3d Cir. 1996). Pursuant to 42 U.S.C. § 1983, governmental entities cannot be liable for the actions of its employees on a *respondeat superior* theory. *Iqbal*, 556 U.S. at 676. The Court in *Monell* held:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell*, 436 U.S. at 694. There must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation" to establish municipal liability. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

---

Bogota. (ECF No. 32 at 2.) As the Court previously explained, Count 7 is not asserted against Bogota. (ECF No. 31 at 1–2.) Therefore, the Court is unable dismiss Count 7 as to Bogota. *See Fisher v. Schott*, 2014 WL 6474216, at *5. Accordingly, the Court construes the Motion as being limited to Bogota moving to dismiss Count 16.

### A. Policy or Custom

There are three scenarios where the acts of a government employee may be characterized to be the result of a policy or custom of a government entity:

> The first is where the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy. The second occurs where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself. Finally, a policy or custom may also exist where the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.

*Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 250 (3d Cir. 2007) (citation omitted).

"Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Benjamin v. E. Orange Police Dep't*, 937 F. Supp. 2d 582, 595 (D.N.J. 2013) (alteration in original) (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well settled' as to virtually constitute law." *Id.* (alteration in original) (quoting *Andrews*, 895 F.2d at 1480). The scope of the alleged custom must "encompass a category of activities that might reasonably be the subject of a discrete official policy, while not expanding to the point of meaninglessness." *Clayton v. City of Newark*, Civ. A. No. 21-1289, 2021 WL 6062342, at *5 (D.N.J. Dec. 22, 2021). While a plaintiff can adequately allege a custom by providing evidence of a pattern of misconduct, "a plaintiff cannot tie together disparate instances of misconduct that 'would encompass nearly every activity of the [police] department,' as it 'deprives the [municipality] of the notice to which it is entitled as to what policies it maintains that deprived

[the plaintiff] of his rights.'" *Id.* (alterations in original) (quoting *Freeman v. City of Crown Point*, Civ. A. No. 13-59 JD, 2014 WL 545511, at *10 (N.D. Ind. Feb. 11, 2014). Rather, any evidence of prior instances of misconduct set forth by a plaintiff must be sufficiently related to the alleged misconduct at issue so as to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Bielevicz v. Dubinon*, 915 F.2d 845, 851 (3d Cir. 1990); *Strauss v. City of Chicago*, 760 F.2d 765, 769 (7th Cir. 1985).

Here, while Bernal has failed to identify any specific Bogota policy, he has potentially identified a custom. Bernal has expounded upon his previously conclusory allegations that Bogota maintains a custom of authorizing, or exhibiting deliberate indifference to, constitutional violations by its officers. In support of his contention, Bernal sets forth three instances where Bogota failed to take remedial action after receiving complaints alleging constitutional violations by its officers. (ECF No. 17 ¶¶ 205–212.) Bernal cites to: (1) a 2008 incident where several Bogota officers were accused of false arrest, false imprisonment, fabricating evidence, and aiding and abetting assault and battery of two Bogota residents, (*id.* ¶ 208); (2) a 2017 incident where a recorded conversation captured a Bogota officer allegedly intimidating and threatening a principal of a Bogota grade school, (*id.* ¶ 210); and (3) a 2012 incident where a Bogota police captain allegedly admitted to "purposefully fail[ing] to investigate an incident of police misconduct," (ECF No. 20 at 8). Bernal alleges that Bogota failed to take remedial action in each these instances pursuant to a custom of authorizing, or exhibiting deliberate indifference to, constitutional violations by its officers. (*Id.* ¶ 212.) Further, Bernal claims this custom directly caused Individual Defendants to violate Bernal's constitutional rights. (*Id.* ¶ 222.)

While these allegations go beyond a mere "[c]onclusory recitation of the elements of a *Monell* claim," they cannot form the basis of Bernal's *Monell* claim because they are disparate

8

instances of general misconduct that are not sufficiently linked to Bernal's allegations, therefore "depriv[ing] [Bogota] of the notice to which it is entitled as to what policies it maintains that deprived [Bernal] of his rights." *Clayton*, 2021 WL 6062342, at *4–5. In other words, the facts surrounding the three past instances of misconduct that Bernal references are too dissimilar to the facts surrounding his own arrest to create a reasonable inference that all four instances of misconduct occurred pursuant to a single custom that Bogota has adopted. *See id.*; *Williams v. Ponik*, Civ. A. No. 15-1050, 2019 WL 168827, at *11–12 (D.N.J. Jan. 11, 2019) ("[A plaintiff] must show why [] prior incidents were wrongly decided and how the misconduct in those cases is similar to that involved in the present action."). Accordingly, Bernal has failed to establish a claim based on policy or custom.

      **B.**    **Failure to Train**

"[I]n the absence of an unconstitutional policy, a municipality's failure to properly train its employees and officers can create an actionable violation of a party's constitutional rights under § 1983." *Reitz v. Cnty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997) (citation omitted). However, a failure to train claim can only serve as the basis for Section 1983 liability when "the failure to train amounts to deliberate indifference to the rights of persons with whom the [municipal employees] come into contact." *Id.* (alteration in original) (citation omitted). "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983." *Id.* (citation omitted).

Establishing a failure to train claim under Section 1983 is difficult. *Id.*; *City of Canton*, 489 U.S. at 387 (explaining there are "limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under § 1983"). "A plaintiff pressing a § 1983 claim must identify a failure to provide specific training that has a causal nexus with their injuries and must

9

demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred." *Id.* (citing *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1030 (3d Cir. 1991)). A "plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997) (emphasis omitted). Specifically, "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.*

As such, to establish whether a municipality's alleged failure to train amounted to a deliberate or conscious choice, a plaintiff must demonstrate that: "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Doe v. Luzerne Cnty.*, 660 F.3d 169, 180 (3d Cir. 2011) (quoting *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (citation omitted).

Bernal fails to state a claim based on failure to train. The three prior instances of misconduct he refers to do not show "[a] pattern of similar constitutional violations by untrained employees" because each of the prior instances of misconduct are factually dissimilar to his own arrest. *See Clayton*, 2021 WL 6062342, at *4–5; *Williams v. Ponik*, 2019 WL 168827, at *11–12. Accordingly, Bernal has failed to state a claim under Section 1983, and Defendants' Motion to Dismiss Count 16 is **GRANTED**.

## IV.  CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss (ECF No. 18) is **GRANTED**. An appropriate order follows.

> */s/ Brian R. Martinotti*
> **HON. BRIAN R. MARTINOTTI**
> UNITED STATES DISTRICT JUDGE

Date: September 13, 2023

11